UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Michele Lacaillade,
Taylor Lacaillade,
and Andrew Lacaillade

   v.                                 Civil No. 10-cv-68-JD

Loignon Champ-Carr, Inc.

O R D E R

Following the death of Jon Paul Lacaillade II, his wife and children sued Loignon Champ-Carr, Inc. ("Loignon"), alleging claims for, inter alia, negligence, wrongful death, negligence per se, and loss of consortium.[1] The court asked the parties to brief the issue of which state's law applies to this matter. The parties agree that Maine law applies to the issue of liability. Loignon moves for a determination that New Hampshire law applies to the issue of damages. The plaintiffs object and contend that Maine law governs both the issue of liability and the issue of damages.

---

[1] In a separate order issued today, the court granted Loignon's motion to dismiss the plaintiffs' claim for negligence per se.

## Background[2]

On August 25, 2008, Jon Paul Lacaillade, a New Hampshire resident, was riding his bicycle on the side of the road traveling east on Route 25 in Porter, Maine. A tractor-trailer, owned and operated by Loignon, a Canadian business with a "U.S. presence in Maine," and driven by Renald Morin, a Loignon employee, was also traveling east on Route 25. As the truck approached Mr. Lacaillade to pass, he lost control of his bicycle, fell back into the roadway, and landed under the tractor-trailer's tires. He died instantly.

Michele Lacaillade, the decedent's wife, is the duly appointed administratrix of the decedent's estate. She sues on her own behalf and on behalf of the estate. She is joined in the suit by the decedent's two children, his daughter, Taylor, and his son, Andrew. The plaintiffs assert six counts: Count I alleges negligence; Count II alleges wrongful death; Count III alleges negligence per se; and Counts IV through VI allege loss of consortium.

---

[2]The background information is taken from the plaintiffs' first amended complaint, Loignon's motion, and the plaintiffs' objection.

## Discussion

The parties agree that the liability aspect of each of the plaintiffs' claims should be governed by Maine law. Loignon argues that, under applicable New Hampshire choice of law considerations, New Hampshire law should govern the issue of damages. The plaintiffs contend that, under the same choice of law principles, the court should apply Maine's damages law. The laws of Maine and New Hampshire conflict because of differences in the limitation on the amount of damages.

A.   Depecage

"Choice of law questions . . . must be answered on an issue-by-issue basis." Guardian Angel Credit Union v. MetaBank, 2010 WL 1794713, at *5 (D.N.H. May 5, 2010) (internal citation omitted). "Under the doctrine of depecage, different substantive issues in a tort case may be resolved under the law of different states where the choices influencing decisions differ." See, e.g., La Plante v. Am. Honda Motor Co., Inc., 27 F.3d 731, 741 (1st Cir. 1994). The use of depecage is not uncommon, and courts in this state have invoked the principle to decide liability and damages issues according to the laws of different jurisdictions. See Barrett v. Ambient Pressure Diving, Ltd., 2008 WL 4934021, at *2 (D.N.H. Nov. 17, 2008); see also Lessard v. Clark, 143 N.H. 555, 558 (1999). Therefore, application of Maine's law with

respect to liability does not foreclose application of New Hampshire's law to the plaintiffs' claim for damages, and the court will undertake a choice of law analysis without reference to the law governing liability.

B.   Choice of Law

In making a choice of law determination, New Hampshire courts look at "five choice-influencing considerations: (1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the States in the federal system; (3) simplification of the judicial task; (4) advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law." Benoit v. Test Sys., Inc., 142 N.H. 47, 52 (1997) (internal quotation marks and citation omitted). "The relative importance of each factor varies depending on the type of case." Stonyfield Farm, Inc. v. Agro-Farma, Inc., 2009 WL 3255218, at *6 (D.N.H. Oct. 7, 2009) (citing Ferren v. Gen. Motors Corp. Delco Battery Div., 137 N.H. 423, 425 (1993)).

1. Predictability of Results

The first consideration, predictability of results, "relates primarily to consensual transactions, in which it is important that parties be able to know in advance what law will govern a

4

transaction so that they can plan it accordingly." Lessard, 143 N.H. at 556-57 (internal quotation marks and citation omitted). But "[t]his consideration has little relevance in accident cases because they are not planned." Id. at 557; see also In re Wood, 122 N.H. 956, 957-58 (1982).

The parties agree that the first consideration has little relevance. Loignon asserts that to the extent this consideration is relevant, however, it favors application of New Hampshire law. Loignon argues that because the accident occurred near the border between Maine and New Hampshire, and because the decedent was a resident of New Hampshire, the plaintiffs would have anticipated that New Hampshire law would apply to a wrongful death action involving the decedent.

In contrast, the plaintiffs contend that if the court considers the first factor, it should find that it favors application of Maine law. The plaintiffs argue that because the accident report refers to a violation of Maine law, and because the parties had been proceeding with the case as if it would be governed by Maine law, the parties have anticipated that Maine law would govern the lawsuit.

Neither argument is availing. As with any automobile accident, the place of the accident is "fortuitous." Maguire v. Exeter & Hampton Electric Co., 114 N.H. 589, 591 (1974). It is highly doubtful that, prior to traveling, the parties considered

or expected the application of either jurisdiction's law. See Lessard, 143 N.H. at 557. Therefore, the court will give no weight to the first factor.

### 2. Maintenance of Orderliness and Good Relations

"[T]he maintenance of reasonable orderliness and good relationship among the States in our federal system[] requires no more than that a court apply the law of no state which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard, 143 N.H. at 557 (internal quotation marks and citation omitted). Both New Hampshire and Maine have a substantial connection with the facts of the case. The decedent was a New Hampshire resident and his estate is situated in New Hampshire. On the other hand, the parties agree that Loignon has a "U.S. presence in Maine," and the accident occurred in Maine. Therefore, both New Hampshire and Maine are sufficiently connected to the facts to satisfy this prong.[3] See LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982) ("We find that Massachusetts, Maine and New Hampshire are all

---

[3]Although the plaintiffs argue that Maine has a more substantial connection because the relevant evidence and witnesses are located in the state, "[t]hese facts go to the issue of liability, not damages." Lessard, 143 N.H. at 557. Regardless, the New Hampshire Supreme Court has rejected the argument that this factor favors the state of "greatest" significance. Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 17 (1988).

6

sufficiently connected with the facts and legal issues to warrant further scrutiny.").

### 3. Simplification of Judicial Task

The parties agree that the third factor, simplification of the judicial task, is not particularly relevant here. Loignon argues, however, that application of New Hampshire's wrongful death statute in this instance would be slightly easier for the court, given that it is the law of the forum.

Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations. This is not a case with multiple defendants or counterclaims. Cf. Stonyfield, 2009 WL 3255218, at *7 ("Applying a different state's laws to the claims against Schreiber, or even to some of the claims against Stonyfield . . . would make this case unnecessarily confusing and could lead to seemingly inconsistent results."). The only relevant issue is the difference in the limits imposed under Maine's and New Hampshire's law as to how much the plaintiffs may recover in wrongful death damages.

There is no risk that application of Maine's law would make this case unnecessarily confusing. "Because the only contested issue is the availability of various types of damages, and

because the relevant law is readily available, this factor adds little weight in favor of either forum." Barrett, 2008 WL 4934021, at *4 (internal citation omitted).

### 4. Governmental Interests of Forum

The fourth consideration is the advancement by the court of New Hampshire's governmental interests rather than those of another state. Loignon argues that the court has a duty to further New Hampshire's law regarding recovery of estates and beneficiaries. The plaintiffs counter that both New Hampshire and Maine share similar interests in ensuring that individuals who are injured by third parties receive compensation for any losses.

Once again, this factor is of limited importance in this case. Neither party has identified any specific policy concerns underlying either state's wrongful death damages law which the other state's law fails to achieve. See Lessard, 143 N.H. at 558. Both states' laws provide compensation to the plaintiffs for their injuries. As in most cases, "the only real governmental interest that the forum has is in the fair and efficient administration of justice." Clark v. Clark, 107 N.H. 351, 355 (1966). There is no reason why the application of either state's law would be more fair or efficient than the

other. Therefore, this factor does not weigh in favor of either New Hampshire's or Maine's law.[4]

### 5. Sounder Rule of Law

A final consideration is "the court's preference for what it regards as the sounder rule of law, as between the two competing ones." Clark, 107 N.H. at 355. This consideration is generally considered a tie-breaker in close cases. See Stonyfield, 3255218, at *8. In light of the inapplicability of the other choice of law factors, the court finds that this is such a "close case," and a tie-breaker is necessary.

The relevant difference between New Hampshire's and Maine's wrongful death statute is the limit on damages. New Hampshire's wrongful death statute sets a cap on damages for loss of consortium of $150,000 for the decedent's wife and $50,000 each

---

[4]To the extent this factor was pertinent, however, it would likely weigh in favor of the application of Maine's law. Because Loignon is not a New Hampshire defendant, New Hampshire does not have as strong an interest in making available its lower recovery limitation as it would if the defendant were a New Hampshire citizen. See Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974) (Massachusetts had little interest in shielding a foreign corporation from liability under statute limiting wrongful death recovery.). Nevertheless, the court does not give this factor any weight.

for his two children.[5]  Maine's wrongful death statute sets a higher cap of $500,000 for loss of consortium damages.[6]

Loignon argues that neither state's rule is sounder than the other and that the court should not give this factor significant weight.  The plaintiffs agree that neither state's law is fundamentally unsound, but argue that New Hampshire's lower damages cap for wrongful death claims is "outmoded," and that the cap "does not represent the current state of modern times in wrongful death cases."

A brief survey of other states' wrongful death statutes shows that the plaintiffs' argument is well-founded.  For example, neither of the other two states in the First Circuit, Massachusetts[7] and Rhode Island,[8] imposes any limitation on damages in a wrongful death action.  Nor do Vermont,[9] Connecticut,[10] or New York.[11]  Moreover, the handful of states

---

[5]N.H.R.S.A. § 556:12.

[6]18-A M.R.S.A. § 2-804.

[7]M.G.L.A. 229 § 2.

[8]R.I.G.L. 1956 § 10-7-2.  Rhode Island's wrongful death statute actually sets a minimum recovery, $250,000, which is higher than New Hampshire's maximum recovery for loss of consortium damages.  See id.

[9]14 V.S.A. § 1492.

[10]C.G.S.A. § 52-555.

[11]N.Y. Const. Art. I, § 16.

around the country that do impose a limitation on damages for wrongful death generally set a higher cap than does New Hampshire.[12]

This is not the first time that New Hampshire's limitation on damages in a wrongful death action has been considered by the courts in a choice of law analysis. In Maguire, the New Hampshire Supreme Court analyzed whether the issue of damages in a wrongful death action was controlled by Maine law or New Hampshire law. Although the court ultimately determined that New Hampshire law applied because of the state's overwhelming interest in the case, the court noted that New Hampshire's "limitation death statute lies in the backwater of the modern stream," because of its $20,000 cap on damages and because it was at the time "one of only seven States remaining with an outright limit on recovery." Maguire, 114 N.H. at 592.

Although the Maguire court considered a different damages limitation in New Hampshire's wrongful death statute than the one at issue in this case, the same conclusion holds true.[13] Though not dispositive, the actions of other states weigh heavily on

---

[12] See, e.g., O.R.S. § 31.710 (Oregon, $500,000 total cap on noneconomic damages); W.S.A. § 895.04 (Wisconsin, $350,000 cap on recovery for loss of consortium damages).

[13] The Maguire court considered the limitation in N.H.R.S.A. § 556:13, which limited damages in a wrongful death action where the decedent did not leave any dependents.

11

this factor.  See Stonyfield, 2009 WL 3255218, at *8.  Given that the overwhelming majority of states impose no cap on damages in a wrongful death action, and those that do have generally set a higher cap than New Hampshire, the court finds that Maine's wrongful death damages law is "better calculated to serve the total ends of justice" than the competing law of New Hampshire.  Benoit, 142 N.H. at 53 (internal quotation marks omitted).

In sum, none of the first four factors weighs in favor of applying either state's law.  The fifth factor weighs in favor of applying Maine's law.  Therefore, the court will apply the law of Maine to the issue of damages.

## Conclusion

For the foregoing reasons, Loignon's motion for a determination that New Hampshire law applies to the issue of damages (document no. 29) is denied.

SO ORDERED.

*[signature]*
Joseph A. DiClerico, Jr.
United States District Judge

October 7, 2011

cc:  Andrew Ranks, Esq.
     Mark W. Shaughnessy, Esq.
     William J. Thompson, Esq.