UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Michele Lacaillade,</u>
<u>Taylor Lacaillade,</u>
<u>and Andrew Lacaillade</u>

          v.                          Civil No. 10-cv-68-JD

<u>Loignon Champ-Carr, Inc.</u>

<u>O R D E R</u>

Following the death of Jon Paul Lacaillade II, his wife and
children sued Loignon Champ-Carr, Inc. ("Loignon"), alleging
claims for, inter alia, negligence, wrongful death, negligence
per se, and loss of consortium.[1]  The parties have submitted
various motions in advance of trial.

<u>Background</u>

On August 25, 2008, Jon Paul Lacaillade, a New Hampshire
resident, was riding his bicycle on the side of the road
traveling east on Route 25 in Porter, Maine.  A tractor-trailer,
owned and operated by Loignon, a Canadian business with a "U.S.
presence in Maine," and driven by Renald Morin, a Loignon

---

[1]The court subsequently granted Loignon's motion to dismiss
the plaintiffs' claim for negligence per se.  The remaining
claims are subsumed under Maine's wrongful death statute. <u>See</u> 18-
A M.R.S.A. § 2-804; <u>see also</u> <u>DeCambra v. Carson</u>, 953 A.2d 1163,
1164 n.1 (Me. 2008).

employee, was also traveling east on Route 25.  As the tractor-
trailer approached Lacaillade to pass, he lost control of his
bicycle, fell back into the roadway, and landed under the
tractor-trailer's tires.  He died instantly.

Discussion

A.  Loignon's Motions

    1.  Bifurcation

Loignon moves to bifurcate the trial into separate liability
and damage phases, arguing that bifurcation would avoid unfair
prejudice and promote judicial economy.  See Fed. R. Civ. P.
42(b) ("For convenience, to avoid prejudice, or to expedite and
economize, the court may order a separate trial of one or more
separate issues.").  The party seeking bifurcation bears the
burden of proving that it will satisfy the objectives set forth
in the Federal Rule of Civil Procedure 42(b).  See 8 Moore's
Federal Practice § 42.20[8], at 42-55 (3d ed. 2007).

Loignon argues that, in light of the events underlying the
plaintiffs' claim, it would be unfairly prejudicial for evidence
of Lacaillade's death to be presented to the jury before
liability has been determined because it could result in a
verdict based on sympathy for the plaintiffs.  Contrary to
Loignon's theory, evidence of Lacaillade's death also would be

2

admissible during the liability phase, even if the trial were bifurcated.  The manner and circumstances surrounding Lacaillade's death are central to the plaintiffs' claims in this case.  Therefore, as evidence of Lacaillade's death would be admissible at the liability phase of a bifurcated trial, Loignon's claim of unfair prejudice is not supported.

Loignon further argues that bifurcation could save time and resources because of the lack of overlapping evidence.  As noted above, the evidence is likely to overlap.  Further, the potential for conserving resources, which could be said about almost any case, is not of particular concern in this case, as the trial is expected to last less than two weeks and bifurcation would not reduce the length of the trial.

Although bifurcation of liability and damages may be appropriate in some cases, it is "not the normal course of events, and a single trial will usually be more expedient and efficient."  8 Moore's, supra, § 42.20[4][a], at 42-46; see also Fed. R. Civ. P. 42(b) advisory committee note (1966) ("separation of issues for trial is not to be routinely ordered").  After considering all of the factors set forth in Rule 42(b), the court concludes that this case does not warrant a departure from the normal course.  Loignon's request for bifurcation is denied.

2.   Accident Report

Loignon moves to admit into evidence the accident report
prepared by Trooper Daniel Hanson, one of the officers who
investigated the accident.  Loignon argues that the report is
based on a factual investigation and is trustworthy, and
therefore is admissible under Federal Rule of Evidence
803(8)(A)(iii).  The plaintiffs object, arguing that the report
is neither based on a proper factual investigation nor
trustworthy and should be excluded.  The plaintiffs further
challenge a specific portion of Hanson's report that relies upon
a video from www.ehow.com.

Rule 803(8) recognizes an exception to the hearsay rule in
civil actions for reports setting forth "factual findings from a
legally authorized investigation . . . [unless] the source of
information [or] other circumstances indicate a lack of
trustworthiness."  Factors to be considered in assessing the
admissibility of an officer's report include "(1) the timeliness
of the investigation; (2) the special skill or experience of the
official; (3) whether a hearing was held and the level at which
conducted; and (4) possible motivation problems . . . ."  Fed. R.
Evid. 803(8) advisory committee note (1974); accord Blake v.
Pellegrino, 329 F.3d 43, 48 (1st Cir. 2003).  A police officer's
accident report has "an initial presumption of admissibility," so

4

long as it is based on his or her factual investigation.

Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 45-46 (1st Cir.
1991) (noting that most federal courts have adopted a "broad
interpretation" of Rule 803(8)).

a. The Report

The plaintiffs do not challenge Hanson's report as entirely
lacking a factual investigation, but rather argue that it is not
based on a "proper" or "meaningful" factual investigation. The
plaintiffs fault Hanson's investigation because, they contend,
Hanson did not speak with witnesses, did not collect evidence of
the speed of either vehicle, and did not drive the route of the
accident from Morin's vantage point.

The alleged deficiencies are not sufficient to overcome the
report's presumption of admissibility. Hanson's report shows
that he investigated the accident scene and reconstructed the
accident based on that investigation. The plaintiffs' challenges
to the adequacy of Hanson's factual investigation can be
addressed through cross-examination.

The plaintiffs' argument that the report is untrustworthy
because Hanson was not certified by the Accreditation Commission
for Traffic Accident Reconstruction ("ACTAR") as a traffic
accident reconstructionist at the time he prepared the report (he

5

has since obtained his certification) is similarly unavailing. Hanson had participated in and been trained for accident reconstructions at the time he completed the accident report, and his investigation occurred on the date of the accident.

While the plaintiffs' opposition sets forth arguable shortcomings in Hanson's investigation, those shortcomings do not render his report inadmissible under Rule 803(8). Therefore, the court finds that the report is sufficiently trustworthy under Rule 803(8).

> b.   The Section of the Report Relying on www.ehow.com

The plaintiffs also challenge the portion of Hanson's report that relies upon a video located on www.ehow.com. The pertinent portion of Hanson's report provides as follows:

> A video located on WWW.ehow.com [sic] called Sprinting tips for competitive cyclists described sprinting as going 100% and being very focused. Also in the video was a demonstration that showed the rider with their head low and hands down in the "drops" position on the bicycle. The bicycle was swinging from the left to right as the rider was off the seat and leaning forward. I believe that in this position and traveling at such a speed Lacaillade would have had little time to react to the road condition and therefore lost control after slipping off the 3½ inch pavement drop.

The plaintiffs seek to exclude this portion of Hanson's report, both because it relies on a website which is not "a credible and legitimate source of information" and because of the

6

lack of information concerning the video itself.  Loignon
contends that the information from www.ehow.com is sufficiently
trustworthy to be included in Hanson's report.

Loignon has put forth various arguments in support of the
trustworthiness of www.ehow.com, which include citing to articles
discussing the merits of internet sources and, in particular,
www.ehow.com.  Loignon has not, however, addressed the
trustworthiness of the actual video relied upon by Hanson in his
report.  Without any information concerning the video itself, the
court cannot consider it as a trustworthy source of information
for Hanson's report.  Hanson's conclusions based on the video are
further undermined by the inconsistency between the video and the
eyewitness testimony as to the manner in which Lacaillade was
operating his bicycle immediately prior to the accident.

Although the plaintiffs argue otherwise, Hanson's
conclusions and opinions do not rest entirely on the video.
Hanson investigated the scene of the accident, considered witness
statements that suggested that Lacaillade was sprint training,
and took a reading from the bicycle's speedometer.  Therefore,
only the portion of Hanson's "conclusions and opinions" section
that specifically relies upon www.ehow.com must be excluded.
That portion, which is quoted above, shall not be included in
Hanson's report or mentioned in testimony.  Loignon may introduce

7

Hanson's report into evidence with the portion concerning www.ehow.com, which is quoted above, redacted.

### 3.  Evidence of Alcohol Consumption

Loignon moves to exclude evidence of Morin's alcohol consumption.  Morin was given a blood-alcohol test immediately after the accident that showed that he had no alcohol in his system.  At his deposition, Morin testified that he consumed one or two beers on the afternoon prior to the accident in question. Loignon argues that in light of Morin's blood-alcohol level and the lack of allegations that alcohol had any role in the accident, evidence of Morin's alcohol consumption should be excluded as irrelevant.  The plaintiffs agree that alcohol consumption was not a factor in the accident, but contend that Morin's alcohol consumption is relevant because "alcohol consumption can disrupt a person's sleep, leaving them tired the next day."

The plaintiffs have not provided any evidence concerning alcohol's effect on a person's sleep.  Therefore, Morin's alcohol consumption is not relevant to any issue in this case, and the plaintiffs shall not introduce any evidence on that subject.  To the extent the plaintiffs intend to argue that Morin's sleep, or lack thereof, had an impact on the accident, they are free to

cross-examine him on that subject without a discussion of his
alcohol consumption.

    4.   <u>AudioVisual Depositions of Loignon's Employees</u>

     The plaintiffs have indicated that they intend to play at
trial the audiovisual depositions of Steve Dorval, one of
Loignon's owners, and Morin.  Loignon filed objections to
portions of both depositions.  Specifically, Loignon objects to
questions posed to Dorval about the accident history of Loignon's
drivers other than Morin, and to questions posed to Morin about
the Professional Truck Driving Institute and its standards, and
the curriculum from the US DOT for training truck drivers; his
citations and tickets; accidents of other Loignon drivers; and
Morin's actions after the accident.[2]  Loignon argues that these
issues are irrelevant and that any probative value would be
outweighed by the substantial risk of prejudice.  The plaintiffs
oppose Loignon's objections, arguing that the deposition
testimony is admissible because the testimony is relevant, that

---

    [2]Loignon also objected to the portions of both witnesses'
testimony concerning Loignon's insurance coverage and Morin's
testimony relating to the condition of the tractor-trailer's
brake and Morin's alcohol consumption.  At the final pre-trial
conference, the parties agreed to exclude evidence about
Loignon's insurance coverage and the condition of the tractor-
trailer's brake.  The court has already addressed the issue of
Morin's alcohol consumption in this order.

both witnesses were Rule 30(b)(6) designees, and therefore, their testimony is admissible under Federal Rule of Civil Procedure 32(a)(3).

      a.  <u>Dorval</u>

Loignon designated Dorval as its Rule 30(b)(6) witness and thus, under Rule 32(a)(3), the plaintiffs may use his deposition testimony at trial for any purpose, to the extent such testimony is relevant.  In their opposition, the plaintiffs argue that Dorval's testimony regarding Loignon's accident history is relevant because Loignon "did not provide any training or review following accidents."  The plaintiffs fail to explain, however, how Loignon's failure to provide accident training or review is relevant to an issue in this case.  Therefore, the plaintiffs shall not use at trial the portion of Dorval's deposition testimony regarding Loignon's other accidents.

      b.  <u>Morin</u>

Although Loignon did not designate Morin as a Rule 30(b)(6) witness and although the plaintiffs deposed Morin in his individual capacity, the plaintiffs now argue that Morin was a Rule 30(b)(6) designee, and contend that, therefore, they should be permitted to use his deposition at trial for any purpose.  In

support of their argument, the plaintiffs cite to Dorval's
deposition transcript, where he testified that Morin would have
more knowledge as to four specific topics listed in the
plaintiffs' Rule 30(b)(6) deposition notice, all of which concern
the accident itself or the condition of the tractor-trailer
involved in the accident.

The plaintiffs' argument is misplaced.  "A deposition
pursuant to Rule 30(b)(6) is substantially different from a
witness's deposition as an individual." Sabre v. First Dominion
Capital, LLC, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001).
The plaintiffs deposed Morin in his individual capacity, not as a
Rule 30(b)(6) witness testifying on behalf of the corporation.
Indeed, the plaintiffs deposed Morin *before* they deposed Dorval,
and thus, before Dorval suggested that Morin would have knowledge
about topics listed in the plaintiffs' Rule 30(b)(6) deposition
notice.  Therefore, Morin was not a Rule 30(b)(6) witness.

The plaintiffs are limited in the use of Morin's deposition
at trial by the requirements of Rule 32.  Therefore, Morin's
deposition shall not be introduced except as allowed under Rule
32, such as to impeach his trial testimony under Rule 32(a)(2).

c.   <u>Loignon's Objections</u>

The court also addresses Loignon's objections to certain questions posed to Morin during his deposition.

I.   <u>Professional Standards</u>

The plaintiffs questioned Morin during his deposition regarding his knowledge and understanding of certain professional organizations and standards.  The plaintiffs argue that this information is relevant but do not elaborate as to the reason for its relevance.  More importantly, counsel's vague references to the organizations and standards during Morin's deposition are the only evidence in the record on the subject.  Without any further elaboration, the introduction of such evidence could not assist the jury and would likely cause confusion of the issues.  <u>See</u> Fed. R. Evid. 401, 403.  Therefore, the plaintiffs shall not question Morin regarding his knowledge and understanding of professional organizations and standards.

ii.  <u>Prior Citations and Tickets</u>

The plaintiffs seek to attack Morin's credibility by questioning him regarding a declaration to the Quebec Trucking Association that he made on May 30, 2008, certifying that he had not incurred any traffic violations in the preceding twelve

12

months.  Morin's driving record and deposition testimony show
that Morin had incurred two violations during that time, one for
speeding and another for failing to come to a complete stop at a
stop sign.  Loignon argues that evidence of Morin's traffic
violations should be excluded under Federal Rule of Evidence 403
because any probative value is substantially outweighed by the
potential for unfair prejudice.

Federal Rule of Evidence 608(b) permits inquiry into prior
conduct if the conduct is probative of the witness's character
for truthfulness.  The ability to cross-examine a witness
regarding his character for truthfulness is subject to the need
to balance probative worth against prejudicial impact.  <u>See</u> Fed.
R. Evid. 608(b) advisory committee note (1972) ("the overriding
protection of Rule 403 requires that probative value not be
outweighed by danger of unfair prejudice"); <u>see also</u> <u>United
States v. Shinderman</u>, 515 F.3d 5, 16-17 (1st Cir. 2008).

Here, the fact that Morin certified to the Quebec Trucking
Association that he had not incurred any traffic violations over
a twelve month period, when in fact he had incurred two
violations, is probative of Morin's character for truthfulness.
Although there is a potential for unfair prejudicial impact,[3] the

---

[3]The risk of prejudice is not particularly substantial here
because the traffic tickets were for speeding and failure to

13

court is prepared to instruct the jury that the traffic
violations are relevant only for evaluating Morin's credibility.
The plaintiffs may inquire about Morin's traffic violations and
his failure to report them in the declaration, but shall not
introduce extrinsic evidence on the topic, including the
declaration itself or Morin's deposition testimony, unless the
deposition is used to impeach Morin's trial testimony.[4]

### iii. Post-accident actions

At his deposition, the plaintiffs questioned Morin about his
medical treatment and remedial training after the accident.  They
claim this testimony is relevant because it rules out a medical
explanation for Morin's alleged negligent driving during the
accident and it demonstrates that Loignon does not require
remedial training for drivers following fatal accidents.

With regard to Morin's medical treatment, Loignon has made
clear that it does not intend to argue, nor is there any
evidence, that Morin had any medical condition that played a role

---

completely stop at a stop sign, which are not actions at issue in
this case.

[4]As with Dorval, the plaintiffs also questioned Morin
regarding accidents of other Loignon drivers.  The plaintiffs are
precluded from questioning Morin about other drivers' accidents
which are not relevant here for the same reasons.

in the accident.  To the extent the plaintiffs wish to question Morin directly about whether a medical condition could have had led to the accident, they may do so.

With regard to Morin's remedial training, as discussed above, the plaintiffs have failed to demonstrate the relevance of Loignon's post-accident training for its drivers.  Therefore, evidence of Morin's remedial training after the accident is precluded.

In sum, the plaintiffs are permitted to introduce Dorval's deposition at trial to the extent it is relevant, but shall not introduce that part in which Dorval discusses the accidents of other Loignon drivers.  The plaintiffs shall not introduce Morin's deposition at trial except as allowed under Rule 32.  The plaintiffs shall not introduce evidence or question Morin or Dorval about Loignon's other accidents, Morin's use of alcohol, Morin's understanding or knowledge of professional organizations or standards, or Morin's post-accident actions.  The plaintiffs may ask Morin about whether he had a medical condition at the time of the accident.  The plaintiffs may also ask Morin about the declaration in which he omitted citations and tickets, may, if appropriate, use his deposition testimony on that subject to impeach his trial testimony, but shall not attempt to prove that

15

Morin omitted information on the declaration by introducing
extrinsic evidence.  Fed. R. Evid. 608(b).

B.    The Plaintiffs' Motions

      1.    Motion to Preclude Opinion Testimony of Mercedes Kuzina

      The plaintiffs move to preclude certain testimony by
Lacaillade's niece, Mercedes Kuzina.  Kuzina was riding with the
same group of cyclists as Lacaillade on the date of the accident.
Kuzina was a witness to the accident, although she testified at
her deposition that she did not actually see Lacaillade fall into
the road and instead recalls seeing a "blur of color."

      Kuzina testified at her deposition that after the accident,
she wanted to tell Morin that he was not at fault.  The
plaintiffs seek to preclude Kuzina's testimony as to her opinion
on fault, but do not object to any testimony which is based on
her personal observations.  Loignon objects, arguing that
Kuzina's view as to Morin's fault is admissible as lay opinion
testimony.

      The court has already issued an order excluding the opinion
testimony of Kuzina's mother, Heidi Placy, who was riding with
Kuzina at the time of the accident.  See Lacaillade v. Loignon
Champ-Carr, Inc., 2011 WL 5520942 (D.N.H. Nov. 14, 2011).
Although Kuzina, unlike Placy, at least partially observed the

16

accident itself, the court's analysis remains the same.  Kuzina's
testimony at trial will be limited to her firsthand knowledge,
which is what she saw before, during, and after the accident, to
the extent such testimony is relevant.  She will not be permitted
to testify about who was or was not at fault, what caused the
accident, or about any other matter that falls outside of the
limitation described above.  Counsel shall carefully instruct
Kuzina accordingly, before she testifies at trial, and shall also
instruct her that in the event opposing counsel objects after a
question is asked, she is not to answer that question until the
judge has ruled on the objection.

### 2.   Motion to Exclude Evidence of Non-Prosecution

The plaintiffs move to exclude evidence of the lack of
criminal charges against Morin arising out of the accident.
Loignon cross-moves to "exclude any and all references, testimony
or evidence that may lead to an inference of a criminal
prosecution."  Specifically, Loignon's cross-motion seeks to
exclude evidence that Trooper Fillebrown, one of the
investigating officers, referred the fatality to the District
Attorney's office and Trooper Hanson's conclusion that Morin had
violated a Maine safety statute.

17

"[E]vidence of nonprosecution or acquittal of a crime . . . is generally inadmissible in a civil trial concerning the same incident." Johnson v. Elk Lane Sch. Dist., 283 F.3d 138, 147 (3d Cir. 2002). "The rule is primarily based on the fact that criminal and civil trials require different burdens of proof for proving guilt and liability, respectively." Id.; see also Muñoz v. State Farm Lloyds of Tex., 522 F.3d 568, 572 (5th Cir. 2008).

Evidence that could lead to an inference of the lack of criminal charges against Morin may have probative value in this case, depending on the context in which it is introduced. The probative value, however, may be outweighed by the risk of prejudice. The admissibility of such evidence depends on the trial context and must be assessed then. Therefore, before either party introduces evidence about the lack of criminal charges against Morin, including evidence of Trooper Fillebrown's discussions with the District Attorney's office concerning Lacaillade's death, the party shall bring it to the court's attention, and the court will address the matter at trial.

Loignon also seeks to exclude Hanson's testimony regarding whether Morin violated 29-A M.R.S.A. § 2070, based on the amount of space between the tractor-trailer and Lacaillade. Such evidence concerns Hanson's investigation of the accident and does not relate to the prosecution, or lack of prosecution, of Morin.

18

Indeed, Hanson's conclusion is contained within his accident reconstruction report, which Loignon moved to admit into evidence.  Therefore, Hanson can testify about his conclusion that Morin violated § 2070.  <u>See, e.g.</u>, <u>Finney v. Royal & Sunalliance Ins. Co.</u>, 2002 WL 34682959, at *3 (W.D. Pa. Feb. 22, 2002) (admitting, in a civil action, a detective's testimony concerning his investigation of a fire, including his conclusion that the cause of the fire was arson and that the plaintiff was a suspect).

### 3.   <u>Motion to Preclude Evidence of Bankruptcy</u>

The plaintiffs move to preclude evidence concerning Michele Lacaillade's recent bankruptcy filing.  They argue that the bankruptcy filing is not relevant to any issue in this case.  Loignon did not object to the motion.  The court finds no reason that evidence concerning Ms. Lacaillade's bankruptcy is relevant to any issue in this case.  Therefore, such evidence is precluded.

### <u>Conclusion</u>

For the foregoing reasons, Loignon's motion to bifurcate trial (document no. 51) and the plaintiffs' motion to exclude evidence of non-prosecution (document no. 81) are denied.

19

Loignon's motion to exclude evidence of alcohol consumption (document no. 56) and objections to portions of audiovisual depositions of Loignon's employees (document nos. 59 and 91), and the plaintiff's motions to exclude the opinion testimony of Mercedes Kuzina (document no. 78) and to preclude evidence of Michele Lacaillade's bankruptcy filing (document no. 79) are granted. Loignon's motion to admit Hanson's accident reconstruction report (document no. 55) is granted in part but denied as to the section that relies upon www.ehow.com, which shall be redacted from the report. Loignon's cross-motion to exclude the inference of a criminal prosecution (document no. 88) is granted with the exception of Hanson's conclusion that Morin violated 29-A M.R.S.A. § 2070.


SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 2, 2011

cc:  Anthony M. Campo, Esquire
     Nicholas D. Cappiello, Esquire
     Michael P. Johnson, Esquire
     Andrew Ranks, Esquire
     Mark W. Shaughnessy, Esquire
     William J. Thompson, Esquire